# IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHERRI McSWAIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 1:06 CV-1009-WKW** |
| | ) | |
| **PROVIDENT LIFE AND** | ) | |
| **ACCIDENT INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## DEFENDANT'S BRIEF IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

---

Defendant Unum Life Insurance Company of America ("Unum Life"), improperly identified in the Complaint as Provident Life and Accident Insurance Company,[1] has moved this Court for summary judgment in its favor on all claims asserted against it. In support of its Motion, Unum Life has filed herewith its Evidentiary Submissions in Support of Its Motion for Summary Judgment. Unum Life submits this brief in support of its Motion for Summary Judgment and shows the Court that there is no genuine issue of material fact, and that Unum Life is entitled to judgment as a matter of law.

---

[1] Unum Life Insurance Company of America ("Unum Life") issued the applicable policy and is the only proper Defendant.

## INTRODUCTION

In this case, Plaintiff claims that Unum Life failed to pay her disability benefits under the Employee Retirement Income Security Act (ERISA). Contrary to Plaintiff's claim, the evidence in the administrative record clearly demonstrates that she did not meet the policy definition of "disability" at the relevant time.

Unum Life paid Plaintiff disability benefits for the entire 24-month own-occupation period. After the own-occupation period expired, the medical records, including records from Plaintiff's treating physicians, revealed that Plaintiff's physical condition did not prevent her from performing the duties of several different occupations. As a result, Unum Life asks this Court to enter summary judgment in its favor because Unum Life's decision was correct. At a minimum, the decision was not arbitrary and capricious.

## STATEMENT OF FACTS

I.  **SOUTHEAST ALABAMA MEDICAL CENTER'S LONG-TERM AND VOLUNTARY WORKPLACE BENEFITS DISABILITY PLANS**

   A.  **Background Information on Both Plans**

Plaintiff began working for Southeast Alabama Medical Center ("SAMC") in July of 2000. Exhibit 2 at UACL00152.[2] SAMC afforded its full-time

---

[2] For ease of reference, Exhibit 1 to Unum Life's Evidentiary Submissions is the Declaration of Gretchen Roberts, Manager for Unum Life. Exhibit 1 authenticates its attachments – Exhibit 2, pertinent excerpts from the claim file, and Exhibit 3, the Policy. The claim file excerpts are referenced herein by their Bates numbers.

employees both Voluntary Workplace Benefits disability insurance through a policy issued by Provident Life and Accident Insurance Company ("Provident Life") and group long-term disability insurance coverage through a policy issued by Unum Life. *See* Exhibit 1 at ¶ 2; Exhibit 3 at C.FP-1.

Provident Life paid Plaintiff Voluntary Workplace disability benefits for the period from January 23, 2004, to July 23, 2004. Plaintiff's claims in this case do not involve this period of time or the Provident Life Voluntary Workplace Benefits disability policy (or any other Provident Life policy). Plaintiff's claims involve only the long-term disability policy issued by Unum Life.

**B.    Key Long-Term Disability Policy Provisions**

ERISA governs Plaintiff's claims in this case. Complaint at ¶ 16; Exhibit 3 at C.FP-1. The applicable policy affords discretionary authority to Unum Life to make claims decisions: "When making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions on the policy." Exhibit 3 at CC.FP-1.

The policy also provides coverage for participants with a "disability."

HOW DOES UNUM DEFINE DISABILITY?

You are disabled when Unum determines that:

- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and

3

- you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

Exhibit 3 at LTD-BEN-1 (all emphases in original). To be eligible for benefits, claimants must satisfy this definition of disability throughout a 90-day elimination period. Exhibit 3 at LTD-BEN-1. The policy further defines "gainful occupation" as "an occupation that is or can be expected to provide you with an income at least equal to your gross disability payment within 12 months of your return to work." Exhibit 3 at Glossary-1.

### C.    Unum Life's Claims Decisions

Unum Life is responsible for investigating and evaluating claims to determine whether claimants are eligible under the terms of the policy. Exhibit 1 at ¶ 6. This ensures that Unum Life pays only those claimants who actually meet eligibility requirements, and that the employer can provide disability coverage to employees at an affordable cost. Exhibit 1 at ¶ 6. The decisions that claims employees within the Unum Life organization make or recommend in connection with disability claims do not affect their pay, advancement within the company, or other privileges of employment in any way. Exhibit 1 at ¶ 6.

## II.    PLAINTIFF'S CLAIM FOR BENEFITS

On January 2, 2004, Plaintiff completed her claim for disability benefits. Exhibit 2 at UACL00026. She described her occupation as a nurse and her allegedly disabling condition as back pain. She lists December 23, 2003, as the last day she worked. Exhibit 2 at UACL00026. On January 9, 2004, Dr. Nicholas Voss completed Plaintiff's attending physician's statement. Exhibit 2 at UACL00028. Dr. Voss listed Plaintiff's restrictions and limitations only as "Dr. requests pt not work for 2 months." Exhibit 2 at UACL00028. On May 18, 2004, SAMC prepared Plaintiff's Employer's Statement. Exhibit 2 at UACL00152-153. Plaintiff's job duties required her to provide professional nursing care to surgical patients of all ages. Exhibit 2 at UACL00155. Major tasks of her job include standing, walking, sitting, talking, using her hands, pushing, pulling, stooping, kneeling, and lifting up to 50 pounds. Exhibit 2 at UACL00161.

## III.    UNUM LIFE'S INITIAL LONG-TERM DISABILITY BENEFITS DECISION

As part of its investigation of Plaintiff's claim for long-term disability benefits, on May 14, 2004, Unum Life contacted Plaintiff by telephone. Exhibit 2 at UACL0080. Plaintiff described her diagnosis as a herniated disc in her back. Exhibit 2 at UACL0080. Plaintiff also submitted various medical records to Unum Life in support of her claim.

On June 10, 2004, Unum Life determined that Plaintiff qualified for disability benefits under the 24-month own-occupation provisions of the long-term disability policy.  Exhibit 2 at UACL00251.  As a result, Unum Life paid Plaintiff benefits for the period from March 23, 2004, through May 9, 2006.  Complaint at ¶ 10; Exhibit 1 at ¶ 7; Exhibit 2 at UACL00251, UACL00965.

Plaintiff's claims in this case do not involve this 24-month period or the own-occupation provisions of the long-term disability policy.  Plaintiff's claims involve only the any-occupation provisions of the long-term disability policy.

## IV.  UNUM LIFE'S DETERMINATION THAT PLAINTIFF WAS NOT ELIGIBLE FOR FURTHER BENEFITS

### A.  Unum Life's Any-Occupation Claim Investigation and the Medical Records Plaintiff Submitted

Toward the end of the 24-month own-occupation period, Unum Life reevaluated the claim to determine whether Plaintiff continued to qualify for disability benefits under the any-occupation provisions of the policy.  As part of Unum Life's evaluation of whether Plaintiff was qualified under these provisions, Plaintiff submitted medical records and objective test results that reflect as follows:

- On December 8, 2005, Dr. Nicholas Voss, Plaintiff's treating neurosurgeon, noted that Plaintiff could lift 21-30 pounds and that her prognosis for returning to work on a full-time or part-time basis was "good."  Exhibit 2 at UACL00828-829.

- On December 27, 2005, physical therapists at Physical Therapy Associates of Dothan performed a functional capacities evaluation ("FCE") on Plaintiff.[3] The FCE found that Plaintiff was capable of performing work with sedentary to light physical demands. Plaintiff could lift and carry up to 20 pounds. She was able to occasionally kneel, crouch, reach overhead, and bend. The therapists also determined that Plaintiff could perform some of her nursing duties, such as taking temperature, pulse and blood pressure, preparing rooms for patients, sterilizing instruments, recording physical findings and administering medications. Exhibit 2 at UACL00877.

- On January 31, 2006, Dr. David Evans, another of Plaintiff's treating physicians, deferred to Dr. Voss' evaluation for Plaintiff's restrictions or limitations. Exhibit 2 at UACL00851-852.

- On February 22, 2006, Physical Therapy Associates of Dothan, which performed Plaintiff's FCE, noted that Plaintiff had only a 10% impairment rating. Exhibit 2 at UACL00908.

Based on the information submitted by Plaintiff, Unum Life called Plaintiff on February 21, 2006. During that telephone conversation, Plaintiff admitted that

---

[3] Plaintiff's treating doctors ordered the FCE. Plaintiff did not provide Unum Life with a copy of this FCE until March 8, 2006.

the functional capacities evaluation performed on her revealed she was capable of work in the light to sedentary range. Exhibit 2 at UACL00858.

**B.    Unum Life's Medical and Vocational Evaluations**

As part of its claim investigation, Unum Life also performed several internal medical and vocational reviews of Plaintiff's claim.

- On January 20, 2006, Christy Searcy, a Vocational Rehabilitation Consultant, performed a vocational assessment of Plaintiff's claim. Based on Dr. Voss' December 8, 2005, report, Searcy concluded that Plaintiff could perform the duties of a school or office nurse or a hospital admitting clerk. Exhibit 2 at UACL00839-840. There is no question that these jobs satisfied the "gainful occupation" requirements of the policy. Exhibit 2 at UACL00838-839

- On March 22, 2006, Board Certified Orthopedic Surgeon Dr. George Seiters reviewed Plaintiff's medical records. He also called the physical therapist who performed Plaintiff's FCE. Dr. Seiters concluded that Plaintiff could walk and stand occasionally and sit frequently. However, Dr. Seiters also recommended obtaining Dr. Voss' assessment of the FCE. Exhibit 2 at UACL00929.

- On March 23, 2006, Dr. Seiters wrote Dr. Voss requesting his assessment of the FCE and Plaintiff's restrictions and limitations.

Exhibit 2 at UACL00935. On April 5, 2006, Dr. Voss responded and agreed with the FCE assessment and provided no further restrictions and limitations on Plaintiff's abilities. Exhibit 2 at UACL00950.

- On May 2, 2006, Unum Life performed another vocational assessment based on this new information. Christy Searcy concluded that her previous vocational assessment was appropriate, and Plaintiff could perform work with light physical demands. Exhibit 2 at UACL00953.

**C.    Unum Life's Any-Occupation Claim Decision**

Based on all of the medical records submitted and the medical evaluations conducted, Unum Life wrote Plaintiff on May 11, 2006, to inform her that she no longer met the policy definition of "disability" because Plaintiff's condition did not render her unable to perform the duties of any occupation. Exhibit 2 at UACL00965-968. Unum Life also gave Plaintiff the opportunity to appeal its decision. Exhibit 2 at UACL00968.

**V.    PLAINTIFF'S APPEAL AND UNUM LIFE'S REVIEW OF HER APPEAL**

**A.    Additional Information Submitted by Plaintiff**

On May 15, 2006, Plaintiff appealed Unum Life's termination of her disability benefits. Exhibit 2 at UACL00981. During the course of her appeal, Plaintiff submitted voluminous medical records, many of which duplicated the records already submitted. Exhibit 2 at UACL01018. The records included an

evaluation by Michael McClanahan who concluded that Plaintiff was 100% vocationally disabled. However, the records submitted also revealed that on April 7, 2006, Dr. Voss, Plaintiff's treating neurosurgeon, told Plaintiff he would defer to her FCE, and that he did not find her disabled from working and was not restricting her from working. Exhibit 2 at UACL01448.

### B.     Unum Life's Additional Medical Evaluations

Upon receiving these records, Unum Life referred Plaintiff's claim for further medical evaluation. On June 29, 2006, Unum Life nurse Karen York reviewed the records Plaintiff provided. York concluded that McClanahan's assessment was based mostly on Plaintiff's self-reported perception of her abilities. There was no objective evidence that Plaintiff's condition had deteriorated since the December 2005 FCE, in which physical therapists determined she was capable of performing sedentary to light physical job duties. Exhibit 2 at UACL01520.

Despite a lack of objective data to support the claim, Unum Life submitted Plaintiff's claim for an independent medical record review by Dr. Victoria Langa, a Board Certified Orthopedic Surgeon. Exhibit 2 at UACL01543. After reviewing Plaintiff's medical information, on July 18, 2006, Dr. Langa concluded that Plaintiff was capable of performing work in the sedentary to light range, as reflected by the December 2005 FCE. Dr. Langa further concluded that Plaintiff

was not 100% vocationally disabled, and that there was no evidence of a material deterioration in her abilities since December 2005. Exhibit 2 at UACL01583.

Upon receiving Dr. Langa's report, Unum Life re-submitted Plaintiff's claim for another vocational assessment. Unum Life Senior Vocational Rehabilitation Consultant Shannon O'Kelley concluded that the original occupations identified by Christy Searcy (office or school nurse or hospital admitting clerk) remained viable, and that Plaintiff could work in a job with sedentary to light physical demands. Exhibit 2 at UACL01614-1615.

### C.    Unum Life's Decision on Appeal

Based on all of this information, on August 2, 2006, Unum Life notified Plaintiff that it would not reverse its previous determination because the evidence did not support her claim of disability from an any-occupation standpoint. Exhibit 2 at UACL01620-1623. Plaintiff did not appeal further, and this lawsuit ensued.

## DISCUSSION OF RELEVANT LEGAL AUTHORITIES

### I.    INTRODUCTION

Plaintiff is not entitled to disability benefits because Unum Life correctly determined that she did not satisfy the eligibility provisions of the policy at the relevant time. At a minimum, this Court should uphold Unum Life's decision as reasonable under the applicable "heightened arbitrary and capricious" standard of review and grant Unum Life's Motion for Summary Judgment.

## II.    STANDARD OF REVIEW

As part of its decision-making process, this Court must determine the standard of review to apply to Unum Life's claim decision. In an ERISA case, the Court applies either the de novo standard of review or the arbitrary and capricious standard, depending upon whether the benefits plan gives Unum Life discretion to construe the terms of the plan. *Hunt v. Hawthorne Assoc., Inc.*, 119 F.3d 888, 912 (11th Cir. 1997). The insurance policy issued to SAMC gives complete discretionary authority to Unum Life to make claims decisions. Exhibit 3 at CC.FP-1. The Eleventh Circuit has found similar language sufficient to trigger the "arbitrary and capricious" standard of review and limit the Court's analysis of the claim decision to the administrative record at the time of the decision. *Paramore v. Delta Airlines*, 129 F.3d 1446, 1451 (11th Cir. 1997). Plaintiff has acknowledged this standard in her complaint. Complaint at ¶ 15.

The Eleventh Circuit has also found that a conflict of interest exists when the plan administrator is also the insurer that pays claims out of its own assets. *Brown v. Blue Cross & Blue Shield of Ala.*, 898 F.2d 1556, 1562 (11th Cir. 1990). In such cases, the Court must apply a "heightened arbitrary and capricious" standard to account for the conflict. *Brown*, 898 F.2d at 1564.[4] *Brown* established a step-by-

---

[4]    Although it disagrees with the decision, Unum Life nevertheless acknowledges that the applicable standard of review in this case is the "heightened arbitrary and capricious" standard. In any case, Plaintiff bears the ultimate burden of demonstrating that she meets the definition of

step process for applying the heightened arbitrary and capricious standard. That process was refined in *Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132, 1137-1138 (11th Cir. 2004).

Pursuant to this process, the Court must first determine if Unum Life's interpretation of the policy was right. If Unum Life reached the correct interpretation, its decision should be upheld. If, however, Plaintiff has proposed an alternative interpretation which is also valid, the Court must determine whether Unum Life was arbitrary and capricious in adopting a different interpretation. *Williams*, 373 F.2d at 1137-1138. Under this process, Unum Life should still receive deference "when it demonstrates that it is exercising discretion among choices which reasonably may be considered to be in the interest of the participants and beneficiaries." *Brown*, 898 F.2d at 1568.

**III.    UNUM LIFE REACHED THE CORRECT DECISION IN DENYING PLAINTIFF'S BENEFITS.**

Unum Life reached the correct decision in denying Plaintiff's claim for benefits because she did not meet the any-occupation eligibility requirements of the policy. In order to receive disability benefits after the 24-month own-occupation period expired, Plaintiff bears the burden of establishing she was not able to perform the duties of any gainful occupation for which she was qualified by

---

"disability" under the policy and is entitled to benefits. *See Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) ("A plaintiff suing under [ERISA] bears the burden of proving her entitlement to contractual benefits.").

her education, training and experience. Exhibit 3 at LTD-BEN-1. As Unum Life informed Plaintiff, she was not eligible for any-occupation benefits because the medical evidence in her claim file, including information from her own treating physicians and her own FCE, clearly revealed that she was capable of performing the duties of several different "gainful occupations" after the expiration of the 24-month period. Exhibit 2 at UACL00965-968; Exhibit 3 at LTD-BEN-2.

Unum Life correctly denied Plaintiff's claim based on the fact that her own treating doctors indicated she was capable of performing at least sedentary to light work. The evidence demonstrates:

- Plaintiff's treating neurosurgeon, Dr. Voss, noted that Plaintiff's prognosis for returning to work was "good." Exhibit 2 at UACL00828-829.

- In December 2005, physical therapists who performed an FCE on Plaintiff found that she was capable of performing work with sedentary to light physical demands. Exhibit 2 at UACL00877.

- In January 2006, another of Plaintiff's treating physicians deferred to Dr. Voss for any restrictions or limitations on Plaintiff. Exhibit 2 at UACL00851-852.

- In February 2006, the physical therapists who performed Plaintiff's FCE noted that she had a **10%** impairment rating. Exhibit 2 at UACL00908.

- On April 5, 2006, Dr. Voss agreed with the FCE and provided no further restrictions and limitations on Plaintiff. Exhibit 2 at UACL00950.

- On April 7, 2006, Dr. Voss told Plaintiff he did not find her disabled and was not restricting her from working. Exhibit 2 at UACL01448.

Unum Life had a board certified orthopedic surgeon, two nurses and two vocational specialists review the medical records submitted by Plaintiff. These medical and vocational personnel concluded that:

- Plaintiff could perform the duties of a school or office nurse or a hospital admitting clerk. Exhibit 2 at UACL00839-840, 953, 1614-1615.

- Plaintiff could walk and stand occasionally and sit frequently.

- The assessment that Plaintiff was 100% vocationally disabled was based mostly on Plaintiff's self-reported perception of her abilities. Exhibit 2 at UACL01520.

- There was no objective evidence that Plaintiff's condition had deteriorated since the December 2005 FCE in which physical therapists determined she was capable of performing sedentary to light physical job duties. Exhibit 2 at UACL01520.

Despite a lack of objective data to support Plaintiff's claim, Unum Life submitted the claim for an independent medical record review by Dr. Victoria

Langa. Exhibit 2 at UACL01543. Dr. Langa concluded that Plaintiff was capable of performing work in the sedentary to light range. Exhibit 2 at UACL01583.

Based on all of this evidence, Unum Life correctly determined that Plaintiff was not eligible for long-term disability benefits under the any-occupation provisions of the policy. As a result, the Court should uphold Unum Life's decision and enter summary judgment in its favor.

**IV. EVEN IF UNUM LIFE'S DECISION WAS INCORRECT, IT WAS REASONABLE UNDER THE CIRCUMSTANCES AND WAS CALCULATED TO MAXIMIZE THE BENEFITS FOR ALL PLAN PARTICIPANTS.**

Unum Life's decision was not only correct, it was, at a minimum, reasonable because the record contains ample evidence that Plaintiff is capable of working in some occupations and performing the duties entailed in those occupations. Even if the Court finds that Plaintiff has presented valid evidence in support of her position, "the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Jett v. Blue Cross Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989). Since Unum Life was arguably operating under a conflict of interest at the time its decision was made, it bears the burden of showing that its decision was not tainted by self-interest, but was reasonable and was justified by the benefit afforded to the class of all participates and beneficiaries. "Even a conflicted fiduciary should receive deference when it

demonstrates that it is exercising discretion among choices which reasonably may be considered to be in the interest of the participants and beneficiaries." *Brown*, 898 F.2d at 1568.  Unum Life's decision should be upheld because it satisfies even this heightened level of review.

The purpose of defining specific terms in the policy is to clarify the conditions that will make a person eligible to receive benefits.  Exhibit 1 at ¶ 5. Only those people who meet the specific definitions set forth in the policy will be eligible to receive benefits.  This benefits all plan participants because it insures that disability coverage can be provided at a cost that the plan sponsor can afford. Exhibit 1 at ¶ 6.  The decisions that Unum Life's claims personnel make in connection with disability claims do not affect their pay, advancement within the company, or other privileges of employment in any way.  Exhibit 1 at ¶ 6.

Unum Life's decision-making process regarding Plaintiff's claim centered on whether her condition prevented her from performing the material and substantial duties of any occupation.  Unum Life reviewed the records provided by Plaintiff and her treating physicians.  The medical records revealed, among other things, that Plaintiff's own doctors thought she was capable of sedentary to light work.  Exhibit 2 at UACL00828-829, 851-852, 877, 908, 950, 1448.  This evidence supports the fact that, at a minimum, Unum Life's decision to terminate Plaintiff's benefits after the 24-month own-occupation period was reasonable.

Based on this information and the other information outlined in Section III of this argument, Unum Life concluded that Plaintiff was no longer eligible for benefits because she did not provide any objective evidence to show she could not perform the duties of any occupation. Exhibit 2 at UACL001620-1623. Unum Life's most reasonable alternative was to deny Plaintiff's disability benefits so that those funds could be preserved to pay benefits to someone whose condition actually met the definition of "disability" under the plan's provisions. *Wangenstein v. Equifax, Inc.*, 191 Fed. Appx. 905, 913 (11th Cir. 2006) (affirming summary judgment for defendant). Maximizing benefits available to plan participants at a cost that the plan sponsor could afford, Exhibit 1 at ¶ 6, is considered to be in the best interest of the plan participants. *Brown*, 898 F.2d at 1568.

Apparently, Plaintiff would have Unum Life simply accept one vocational assessment, which is based on Plaintiff's subjective reports, instead of the overwhelming evidence contradicting that assessment, including evidence from Plaintiff's treating physicians and her FCE. In doing so, Plaintiff essentially asks Unum Life to ignore the objective evidence that establishes there was nothing to keep her from performing the duties of other jobs.

However, the law allows Unum Life to require objective evidence to support Plaintiff's claimed inability to work in any occupation. *See Coker v. Metropolitan*

*Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002) ("Although reasonable physicians could disagree on the extent of Coker's disability, MetLife's denial of benefits, **based on the objective evidence of medical tests presented**, is not unreasonable. . . . Coker has provided only subjective medical opinions, which are unsupported by objective medical evidence, such as the results of diagnostic tests."); *Bailey v. Provident Life and Accident Ins. Co.*, 2000 WL 33980014, *4 (N.D. Fla. June 13, 2000) ("Provident owes its policyholders a duty to investigate and seek objective support for the claimant's subjective complaints."); *Maniatty v. UnumProvident Corp.*, 218 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) ("In these circumstances, it was not unreasonable for the administrator to conclude that the only material reason the treating physicians were reaching their diagnoses was based on their acceptance of plaintiff's subjective complaints:  an acceptance more or less required of treating physicians, but by no means required of the administrator."), *aff'd*, 62 Fed. Appx. 413 (2nd Cir. May 15, 2003), *cert. denied*, 540 U.S. 966, 124 S. Ct. 431 (2003); *see also, e.g., Boardman v. Prudential Life Ins. Co.*, 337 F. 3d 9, 17 n. 5 (1st Cir. 2003) (affirming summary judgment for defendant where insured failed to provide objective evidence that the illness rendered her unable to work); *Archible v. Metropolitan Life Ins. Co.*, 85 F. Supp. 2d 1203, 1220 (S.D. Ala. 2000) (concluding that the doctor's disability findings were "based entirely upon [the plaintiff's] subjective complaints rather than any objective findings," the court

gave no credence to the "conclusory disability opinions"); *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 63 F. Supp. 2d 1145, 1156 (C.D. Cal. 1999) ("Having considered all of the evidence before it, it is a *proper exercise of discretionary function* to favor objective evidence over subjective evidence."); *Coleman v. Metropolitan Life Ins. Co.*, 919 F. Supp. 573, 582 (D.R.I. 1996) ("Dr. Stern provided only a completely subjective basis for his finding that plaintiff was totally disabled."); *Finster v. Metropolitan Life Ins. Co.*, 927 F. Supp. 201, 205 (N.D. Tex. 1996) ("From the record, it appears that MetLife did not receive adequate, objective medical evidence to substantiate Plaintiff's claim for disability benefits.").

In this case, Unum Life acted reasonably and appropriately in balancing some of the unsupported statements from a vocational assessment against the overwhelming objective evidence and the objective standards for determining whether Plaintiff met the definition of "disabled" under the any-occupation provisions of the policy. "As long as a reasonable basis appears for [the] decision, it must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision." *Jett*, 890 F.2d. at 1140; *see also Turner v. Delta Family-Care Disability and Survivorship Plan*, 291 F.3d 1270, 1274 (11th Cir. 2002) (affirming district court's decision that found claim administrator's decision was reasonable). Considering all of the information available to it at the

time of its decision, Unum Life's determination was not arbitrary and capricious. For these reasons, Unum Life respectfully asks the Court to enter summary judgment in its favor and dismiss Plaintiff's claims.

## **CONCLUSION**

The Court should affirm Unum Life's determination that Plaintiff no longer met the policy definition of "disability" even under the heightened arbitrary and capricious standard of review. Unum Life's decision was legally correct because the materials submitted by Plaintiff from her own treating doctors reveal she was capable of performing the duties of several different occupations. Accordingly, Unum Life correctly determined that Plaintiff was no longer eligible for benefits. Even if Unum Life did not reach the "correct" decision in the Court's view, its decision was manifestly reasonable under the circumstances and was calculated to maximize the benefits available to all plan participants and to preserve the affordability of disability insurance. Unum Life respectfully asks the Court to affirm its decision and enter summary judgment in its favor dismissing Plaintiff's claim with prejudice.

Respectfully submitted,

s/ **John S. Johnson**
JOHN S. JOHNSON
Bar ID ASB-7114-H67J

OF COUNSEL:
HAND ARENDALL, L.L.C.

1200 Park Place Tower
2001 Park Place North
Birmingham, Alabama  35203
Telephone:  (205) 324-4400
Facsimile:  (205) 397-1307
E-mail:       jjohnson@handarendall.com

HENRY T. MORRISSETTE
Bar ID ASB-7622-E54H

OF COUNSEL:
HAND ARENDALL, L.L.C.
Post Office Box 123
Mobile, Alabama  36601
Telephone:  (251) 432-5511
Facsimile:  (251) 694-6375
E-mail:  hmorrissette@handarendall.com

Attorneys for Defendant improperly styled
as Provident Life & Accident Insurance
Company

## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SHERRI McSWAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 1:06 CV-1009-WKW |
| | ) | |
| PROVIDENT LIFE AND | ) | |
| ACCIDENT INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

---

## CERTIFICATE OF SERVICE

---

I hereby certify that on August 31, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Joseph W. Lewis          bblbjlaw@centurytel.net
John E. Byrd, Jr.
P.O. Box 536
Dothan, Alabama 36302


                         s/ **John S. Johnson**
                         OF COUNSEL